**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**RAUL GUADALUPE-BÁEZ, et al.,**

**Plaintiffs,**

**v.**  **CIVIL NO. 13-1529 (GAG)**

**POLICE OFFICERS A-Z, et al.,**

**Defendants.**

## OPINION AND ORDER

Once again this court reviews a pleading standard challenge in a police brutality case. Raúl Guadalupe-Báez ("Plaintiff" or "Guadalupe"), Ivelissa Báez ("Báez"), and Antonia Hernández ("Hernández") (collectively "Plaintiffs") bring this action seeking compensatory money damages against named and unnamed defendants for the violation of their constitutional rights stemming from the shooting of Plaintiff by members of the Puerto Rico Police Department ("PRPD") and the San Lorenzo Municipal Police (collectively "Defendants"). (Docket No. 18.) This action was brought pursuant to 42 U.S.C. §§ 1983 and 1985 for alleged violations of Guadalupe's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Id. Plaintiffs further invoke the supplemental jurisdiction of the court to hear and decide claims arising under the laws of Puerto Rico under Articles 1802 and 1803 of the Civil Code of Puerto Rico. P.R. LAWS ANN. tit. 31, §§ 5141, 5142.

Plaintiffs brought this action against Unnamed Police Officers A-Z, claiming they were reckless and grossly negligent during their intervention with Guadalupe, when they used excessive force in violation of the Fourth Amendment to the United States Constitution. Id. Furthermore, they claim Hector Pesquera ("Pesquera"), Superintendent of the PRPD at the time of the events; José Román-Abreu ("Román"), Mayor of the Municipality of San Lorenzo; Guillermo Somoza-Colombani ("Somoza"), Secretary of Justice at the time of the events; Luis Sánchez-Betances ("Sánchez"), Secretary of Justice at the time of filing the complaint, (collectively "Supervisor Defendants") are responsible for the negligent training, negligent entrustment, and negligent

**CIVIL NO. 13-1529 (GAG)**

supervision of Police Officers A-Z, which amounts to deliberate indifference and reckless disregard of Plaintiffs' constitutional rights. Id. Moreover, Plaintiffs claim Héctor Orozco ("Orozco") from the Criminal Investigation Center in Caguas and Special Investigations Bureau Officer Carlos Rosa ("Rosa") obstructed justice and conspired to deprive Plaintiffs of the right to seek judicial redress for the shooting of Guadalupe by Unnamed Police Officers A-Z. (Docket No. 18 ¶¶ 32; 100-102.)[1]

Co-Defendants Orozco, Rosa, Pesquera, Somoza and Sánchez move to dismiss the Plaintiffs' complaint pursuant to FED. R. CIV. P. 12 (B)(6). (Docket No. 20.)[2] Namely, these Defendants aim to dismiss Plaintiffs' allegations grounded in supervisory liability, conspiracy, and the Puerto Rico general tort statute. (Docket No. 20.) Defendants further contend that Plaintiffs Báez and Hernández lack standing. Id. at 13. Plaintiffs timely opposed. (Docket No. 21.)

After reviewing the parties' submissions and pertinent law, the court **GRANTS** Defendants' motion to dismiss at Docket No. 20.

## I. Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that

---

[1] Plaintiffs subsequently amended their complaint after the court advised that the allegations in their original complaint would likely fail to surpass the pleading standard. See Docket Nos. 4 & 17.

[2] Defendant Román joined the Supervisor Defendants' motion to dismiss, incorporating the totality of their pleadings. (Docket No. 22.) Plaintiffs opposed Román's joinder. (Docket No. 24.)

2

**CIVIL NO. 13-1529 (GAG)**

is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

**II.     Relevant Factual and Procedural Background**

Sometime between the late hours of July 8, 2012 and early hours of the following day, Guadalupe, of legal age and a resident of Caguas, Puerto Rico, was driving his four-track Honda ATV Model TRX around the Municipality of San Lorenzo. (Docket No. 18 ¶¶ 41- 42.) As he decided to return home, Guadalupe noticed several PRPD police vehicles approaching. Id. ¶ 43. He left the area and, as he was driving on Road 183, a police car began to follow him. Id. ¶ 44. The police car sped towards his vehicle, approaching him very closely. Id. At that time, no other vehicles were in the area. Id. ¶ 45. Guadalupe was not armed. Id. ¶ 46. Fearful of an impact, Guadalupe tried to turn at the next intersection. Id. ¶ 47. While making a turn at the intersection by the San Lorenzo Municipal Police Station, Guadalupe heard a gunshot. Id. Just then, he felt a strong pain in the right side of his abdomen, the side that was facing the police car. Id.

Police Officer A shot Guadalupe. Id. ¶¶ 48; 53. As a result, Guadalupe's vehicle stopped and he fell to the ground. Id. ¶ 54. The Police Officers held Guadalupe under arrest, they seized and searched him but found no evidence of criminal activity. Id. ¶¶ 55-56. Guadalupe was taken in an ambulance to the Medical Center in Río Piedras. Id. ¶¶ 57-56. As result of the gunshot, Guadalupe suffered multiple bowel perforations and underwent surgery. Id. ¶¶ 59-60. Guadalupe

**CIVIL NO. 13-1529 (GAG)**

was never charged criminally for the events that took place the night of the shooting. (Docket No. 18 ¶ 61.) His vehicle was seized and never returned. Id. ¶ 62.

Police Officer Howard Delgado ("Delgado") was among the first officers that helped Guadalupe as he was lying on the ground. Id. ¶ 63. Delgado denies having shot Guadalupe, claiming that the bullet used in the shooting was .40 Caliber, and therefore not from his weapon. Id. ¶ 64. However, Delgado acknowledged that excessive force was used in Guadalupe's arrest but did not identify the author of the shooting. Id. ¶¶ 66-67.

The PRPD initiated an investigation. Id. ¶ 71. Orozco from the Criminal Investigation Center ("CIC") in Caguas was in charge of the investigation. Id. Orozco failed to identify the author of the shooting and, ultimately terminated the investigation, without filing any charges. Id. ¶ 72. Orozco contacted Báez, Guadalupe's mother, to inform her that three (3) individuals were involved in the shooting of her son but failed to disclose the identity of the individuals. Id. ¶ 73-74. Orozco told Báez he would contact her shortly with more information but never contacted her again. Id. ¶ 75. The Special Investigations Bureau also initiated an investigation. Id. ¶ 76. Said investigation was led by Rosa. Id. Rosa also failed to identify the author of Guadalupe's shooting. Id. ¶ 77. At some point, Rosa terminated the investigation. Id. Rosa notified Báez that the driver of the patrol car that chased Guadalupe had been interviewed but did not disclose his identity. Id. ¶ 78.

Plaintiffs sustain that, as a result of Defendants' acts and/or omissions, they have suffered damages. Id. ¶ 81. Because of the shooting, Guadalupe suffered severe abdominal injuries, emotional trauma, and fear of imminent death. Id. Therefrom, he has suffered physical handicaps due to the pain and loss of physical endurance. Id. Guadalupe's injuries are of permanent and continuing nature. Id. Plaintiffs Báez and Hernández have suffered intense emotional damages as a result of the near death of their son/grandson, seeing him in such critical condition, as well as their anguish upon seeing him severely impaired in his physical condition. Id. Plaintiffs have further suffered by Defendants' inaction regarding the shooting, as well as the conspiracy to cover up the

**CIVIL NO. 13-1529 (GAG)**

shooting, obstruction to their day in court and enforcement of their legal rights in court. Id.

### III.     Discussion

As a threshold matter, the court addresses the standing issue raised by Defendants in their motion to dismiss. (Docket No. 20.) This issue was unopposed by Plaintiffs. (Docket No. 21.) Defendants argue that Báez and Hernández lack standing to sue in their individual capacities under Section 1983. "Only persons who have been subject to constitutional deprivations may bring actions under § 1983." Nuñez González v. Vázquez Garced, 389 F.Supp. 2d 214, 208 (D.P.R. 2005); see also Robles Vázquez v. Tirado García, 110 F.3d 204, 206 n.4 (1st Cir. 1997) ("[S]urviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution for their own damages from the victim's death unless the unconstitutional action was aimed at the familial relationship."). Here, Báez and Hernández claim personal damages for the violation of Guadalupe's civil rights. Consequently, Plaintiffs Báez and Hernández's claims under Section 1983 do not proceed as a matter of law. Thus, their claims under Section 1983 are **DISMISSED**.

Now, the court turns to the substantive arguments raised by Defendants' in their motion to dismiss at Docket No. 20.

#### A.     Supervisor Liability

Time and again courts have discussed the steep threshold that a plaintiff has to cross to adequately plead a claim for supervisor liability. Needless to say, the established precedent imposes a hefty burden. See generally Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576 (1st Cir. 1994); Febus Rodríguez v. Betancourt-Lebrón, 14 F.3d 87 (1st Cir. 1994); Gutierrez Rodríguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989); Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988). In light of the complaint presently before the court, the undersigned deems it necessary to review the applicable case law, once again.

In the present case, Defendants argue that Plaintiffs' amended complaint does not meet the pleading standard required for Section 1983 causes of action for failure to supervise and failure to train claims. (Docket 20 at 8.) Defendants are correct. The allegations set forth by Plaintiffs are

**CIVIL NO. 13-1529 (GAG)**

conclusory and completely devoid of facts, hence, they do not meet the well-established standard.

In their amended complaint, Plaintiffs contend that the Supervisor Defendants are "responsible to the plaintiff for their gross negligence, recklessness, deliberate indifference to constitutional rights, reckless disregard of constitutional rights, as these deprivations are manifested in defendants' grossly negligent entrusting, supervising, and investigation of the assault on Mr. Guadalupe." (Docket No. 18 ¶ 34.) They further argue that the Supervisor Defendants "have manifested a pattern or behavior that could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence, amounting to deliberate indifference over the plaintiff's rights and guarantees under the law." Id. at ¶ 35. Namely, they state that "[t]he pattern and practice of use of excessive force, as found by the USDOJ, caused by the adoption and use of inadequate policies and procedures, insufficient training, inadequate supervision, deficient complaint processes and ineffective disciplining by Pesquera, Román, Somoza, and Sánchez, constitutes the 'affirmative link' which caused the street-level misconduct at issue in this case, to wit, the use of excessive force against Mr. Guadalupe." Id. at ¶ 36.

Turning to the law, a supervisors' liability under Section 1983 "may not be predicated upon a theory of respondeat superior." Gutierrez-Rodríguez, 882 F.2d at 562. "A supervisor 'may be found liable only on the basis of her own acts or omissions.'" Id. (quoting Figueroa v. Aponte Roque, 864 F.2d 947, 953 (1st Cir.1989)). "Moreover, a supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others." Febus Rodríguez 14 F.3d at 92. (citing Gutierrez Rodríguez, 882 F.2d at  562); see also Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989).

In order for Plaintiffs to hold "the supervisory defendant . . . liable under [S]ection 1983, the plaintiff had to show that (1) 'the conduct complained of was committed by a person acting under color of state law; and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" Lipsett, 864 F.2d at 901-02 (quoting Voutour v. Vitale, 761 F.2d 812 (1st Cir. 1985)). The second prong has two components, "namely whether there was a deprivation and whether the defendant's conduct caused this deprivation."

**CIVIL NO. 13-1529 (GAG)**

<u>Lipsett</u>, 864 F.2d at 901-02.  It is well established that a plaintiff may prove causation by "showing a pattern of police violence so striking as to allow an inference of supervisory encouragement, condonation, or even acquiescence, or by showing gross negligence [of the defendant] amounting to deliberate indifference . . . ."  <u>Id.</u>

In most cases, like the one we review today, the "causation" element constitutes the biggest challenge for plaintiff.  Often, plaintiffs fail to show a plausible connection between the supervisor and plaintiff's constitutional violation, properly supported by facts.  The First Circuit recently embarked on this issue and stated:  "After <u>Iqbal</u>, as before, we have stressed the importance of showing a strong causal connection between the supervisor's conduct and the constitutional violation."  See <u>Ramírez-Lluveras v. Rivera Merced</u>, Nos. 11- 2339 & 13-1169, 2014 WL 3398427 at * 8 (1st Cir. 2014) (quoting <u>Feliciano Hernández v. Pereira-Castillo</u>, 663 F.3d 527, 533 (1st Cir. 2011) ("[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of a subordinate and the action or inaction of the supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation.")) (internal quotations omitted).  This affirmative link, i.e., the causation, must be strong enough to show that it "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation."  <u>Ramírez-Lluveras</u>, 2014 WL 3398427 at * 8.  In other words, to meet this burden, a plaintiff must plead sufficient facts that, if taken as true, connect the dots between the supervisor's conduct and plaintiff's constitutional violation.

In the instant case, Plaintiffs assert Defendant Pesquera's supervisor liability as follows: "Defendant Pesquera is a person who negligently confided and entrusted defendant Police Officers A, B and C-Z with the authority to discharge their apparent duties." (Docket No. 18 ¶ 26.) Moreover, they state:

> Defendant Pesquera is responsible to the plaintiff for his own actions and omissions, negligent entrustment and negligent supervision of defendant Police Officer A, Police Officer B, Police Officers C-Z, and police personnel in general, a behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence, amounting to deliberate

7

**CIVIL NO. 13-1529 (GAG)**

> indifference and reckless disregard of the plaintiff's rights and guarantees under the law, and improperly training / supervising his subordinates.

Id. The same allegations are also levied against Román, Somoza and Sánchez. (Docket No. 18 ¶¶ 28-30.) Likewise, these same legal conclusions are rehashed later on in the complaint, without any additional factual allegations, to attest the Supervisory Defendants' negligent behavior, amounting to deliberate indifference and reckless disregard of Plaintiffs' constitutional rights. (Docket No. 18 ¶¶ 93-99.)

Here, Plaintiffs' allegations are insufficient to "connect the dots," i.e., show causation, because their allegations are nothing more than legal conclusions, completely devoid of supporting facts. As previously noted, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. Plaintiffs attempt to hold the Supervisor Defendants liable for their own actions, insofar that by their negligent behavior while supervising Police Officers A-Z, they encouraged, condoned or acquiesced the violation of Guadalupe's rights. However, Plaintiffs do not identify the actual underpinnings of the Supervisor Defendants' alleged failure to train. See Rodríguez-Vázquez v. Cintrón Rodríguez, 160 F. Supp. 2d 204, 212 (D.P.R. 2001) (failure to allege prior wrongdoings or supervisor's knowledge of such is fatal to claim of supervisory liability under § 1983). "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio Hernández v. Fortuño-Burset, 640 F.3d 1, 8 (1st Cir. 2011); see Rossi-Cortés v. Toledo Rivera, 540 F. Supp. 2d. 318, 324 (D.P.R. 2008) (recognizing that "'[b]iolerplate [sic] language' regarding a defendant's failure to train his subordinates is insufficient to sustain a Section 1983 claim"). Plaintiffs' Amended Complaint is a repetition of legal jargon *ad nauseam*, that merely lists the elements of a Section 1983 cause of action without any supporting factual allegations. It is evident that these allegations do not suffice. The court previously had warned Plaintiffs that "mere labels do not reach the plausibility standard." (Docket No. 17.) Today, it is clear that Plaintiffs ignored the court's warning.

8

**CIVIL NO. 13-1529 (GAG)**

Plaintiffs justify their deficient pleading arguing that due to Defendants' failure to disclose information about the investigation, they are precluded from pleading factual allegations sufficient to meet the Iqbal/Twombly standard. (Docket No. 18 ¶ 9.) For that reason, in support of their "pattern and practice" allegations, Plaintiffs rely on the Investigation Report of the *Investigation of the Puerto Rico Police Department* by the Civil Rights Division of the United States Department Justice of September 5, 2011 ("U.S. DOJ Report").[3]

Nevertheless, as this court previously warned Plaintiffs, "simply citing the agreement between the government of the United States and the Commonwealth of Puerto Rico for the Reform of the Puerto Rico Police Department does not per se generate any plausibility." See Docket No. 17; Molina v. Vidal Olivo, 961 F. Supp. 2d 382 (D.P.R. 2013). Under the Iqbal/Twombly standard, the U.S. DOJ Report, by itself, is not enough to establish plausible causation. Moreover, the US. DOJ Report may be used as a stepping stone to pave the way to plausibility, however, it must be supplemented with factual allegations relating to the specific facts of the case, tracing the story between the supervisor's conduct and plaintiff's alleged constitutional violation, in accordance with the supervisory liability standard.

Thus, Plaintiffs' supervisor liability claims are **DISMISSED.**

    B.   Conspiracy

Plaintiffs also claim Supervisor and Investigatory Defendants "conspired to violate

---

[3] The U.S. DOJ Report is the result of an extensive investigation of the PRPD carried out by the United States Department of Justice. Ultimately, said investigation led to the filing of a Section 14141 suit by the Attorney General of the United States against the Commonwealth of Puerto Rico for the ongoing civil rights violations by the PRPD. See Civil Case No. 12-2039 (GAG). The U.S. DOJ Report evinces the rampant violations of civilian rights, mostly for the use of excessive force, by PRPD officers across the island.

Defendants argue that, pursuant to the Rules of Evidence, the U.S. DOJ Report is immaterial to Plaintiffs' claims, and therefore, it is not relevant. The court disagrees. Rule 401 of the Federal Rules of Evidence states that: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Considering the investigation's multiple findings of Fourth Amendment violations by members of the PRPD, the U.S. DOJ Report is relevant to Plaintiffs' claims.

**CIVIL NO. 13-1529 (GAG)**

[Guadalupe's] statutory civil rights in violation of 42 U.S.C. §§ 1983 & 1985." (Docket No. 18 ¶ 101.) According to Plaintiffs, Orozco and Rosa, together with the Supervisor Defendants, conspired to obstruct Plaintiffs' right to seek judicial redress for the violation of Guadalupe's constitutional rights by failing to investigate and prosecute Police Officer A and failing to disclose information regarding the identities of the authors of the shooting. Id.  Again, Plaintiffs arguments ring hollow as they fail to set forth any factual allegations in support of their claims.

To adequately state a claim under section 1985(3), a plaintiff must prove: "(1) the existence of a conspiracy; (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  The Supreme Court has construed the statute's references to equal protection and equal privileges and immunities under the laws to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. Aulson, 83 F.3d at 3 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Similarly, under Section 1983, "[a] civil rights conspiracy . . . is a combination of two or more persons acting in concert to commit an unlawful act, . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennet v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (internal quotations omitted); see also Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (noting that a complaint alleging a conspiracy to deprive plaintiff of his civil rights cannot survive motion to dismiss based on conclusory allegations of conspiracy which are not supported by references to material facts).

In this case, Plaintiffs' arguments fail to state sufficient factual allegations to sustain conspiracy claims under either Sections 1983 or 1985.  They argue that Defendant Orozco initiated a complaint to investigate Guadalupe's shooting that led to no avail.  Likewise, the same is alleged

10

against Defendant Rosa for a separate investigation initiated by the Special Investigations Bureau. Yet, nothing in Plaintiffs' complaint points to show a "meeting of the minds" or Defendants' conspiratory animus. According to Plaintiffs, these allegations are sufficient to argue a that Defendants Orozco, Rosa and the Supervisory Defendants conspired to obstruct Plaintiffs' right to seek judicial redress. Plaintiffs' allegations are unsubstantiated and conclusory, therefore, insufficient to state a claim for conspiracy under both sections 1985(3) and 1983. Accordingly, Plaintiffs' conspiracy claims are **DISMISSED**.

C.    Fourteenth Amendment

The First Circuit has held that excessive force claims are not cognizable under the Fourteenth Amendment. Rather, the claims must be brought under the Fourth Amendment. Estate of Bennett, 548 F.3d at 162–3; see Graham v. Connor, 490 U.S. 1865, 1897 (1989) (recognizing that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach."). Here, Plaintiff brings suit alleging violations of his substantive due process right to be free from excessive force under the Fourth and Fourteenth Amendment. Therefore, Plaintiffs fail to state a cause of action under the Fourteenth Amendment, thus, this claims is **DISMISSED**.

D.    Supplemental State Law Claims

Plaintiffs accompany their Section 1983 claims with supplemental state law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. Tit. 31 §§ 5141, 5142. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case

**CIVIL NO. 13-1529 (GAG)**

basis. Id.

As all of the federal claims by Plaintiffs as to the moving defendants have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims. This, however, does not entail that Plaintiffs cannot have their day in court and ultimately prevail. However, it will then to be in the Commonwealth Court of First Instance and not this federal forum.

**IV.   Conclusion**

For the reasons stated above, Defendants' motion to dismiss at Docket No. 20 is **GRANTED**, therefore Plaintiffs claims against Defendants Orozco, Rosa, Pesquera, Román, Sánchez and Somoza are **DISMISSED with prejudice**. Moreover, given the dismissal, Plaintiffs' claims against unnamed defendants Police Officers A-Z are dismissed without prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico this 17th day of September, 2014.

*S/Gustavo A.Gelpí*
GUSTAVO A. GELPI
United States District Judge